EDISON ELECTRIC LIGHT CO. *v.* UNITED STATES ELECTRIC LIGHTING CO.

*Circuit Court, S. D. New York.*    May 15, 1888.)

1. PATENTS FOR INVENTIONS—DURATION OF RIGHT—FOREIGN PATENT.
Rev. St. U. S. § 4887, provides that "every patent granted for an invention which has been previously patented in a foreign country shall be so limited as to expire at the same time with the foreign patent." *Held*, where the application for the foreign patent was not made until subsequent to the application in this country, but the foreign patent issued before the domestic patent, that the term of the domestic patent was limited to the term of the foreign patent.

**2. SAME.**

It is not material whether the foreign patent was granted to the inventor who made the application in this country or to some other person to whom he had caused the invention to be patented; the statute covers both cases.

**3. SAME.**

Nor is it important that the inventor who made the application in this country is one of our own citizens: no statute passed since the act of congress of July 4, 1836, (5 U. S. St. 117,) which repealed all former patent laws making any distinction between citizens and foreigners in respect to the privilege of obtaining patents, except as to the fees to be paid, and the protection of inventions by *caveat.*

**4. SAME—ACTION FOR INFRINGEMENT—PLEADING.**

A bill for infringement of letters patent No. 263,140 of August 22, 1882, to Thomas Edison for an "Improvement in Dynamo Electric Machines" set out the grant of letters upon an application filed August 9, 1880. Besides the usual averments, it alleged by way of anticipation that defendant would rely upon an Austro-Hungarian patent granted to complainant prior to No. 263,140 and the expiration of such foreign patent prior to suit brought; but that complainant had reduced his invention to practice in the United States prior to his application in Austro-Hungary, and that the foreign patent was issued for 15 years and had many years yet to run. Defendant filed a plea denying that the foreign patent was issued for 15 years and alleged that it was issued prior to the American patent, viz., July 21, 1881, and that it, and a renewal set out, had expired. *Held,* that the objection raised could be taken by plea; and that the plea was sufficient in form, the only negative matter it contained being necessitated by the anticipation clause of the bill, and the tenor or legal effect of the foreign patents being averred and profert being unnecessary.

In Equity. Bill for infringement. On plea.

*Wm. M. Evarts, Clarence A. Seward, John C. Tomlinson,* and *Richard N. Dyer,* for complainant.

*S. A. Duncan, Leonard E. Curtis, E. Wetmore,* and *F. H. Betts,* for respondent.

WALLACE, J. The plea to the bill of complaint, which has been set down for argument, alleges in substance that the defendant should not be compelled to answer, because by reason of the facts averred in the plea the remedy of the complainant is plain, adequate, and complete at law, and this court should not take cognizance in equity of the suit.

The bill alleges the infringement by the defendant of letters patent of the United States No. 263,140, dated August 22, 1882, granted to the complainant upon the application of Edison, for an improvement in dynamo-electric machines, the invention of Edison. The bill shows that Edison made his application for a patent August 9, 1880, and assigned his title to the complainant June 21, 1881. Besides the averments usually contained in bills to restrain infringement of patents, allegations are introduced by way of anticipation of the supposed defense to the bill in order to meet any issue tendered by the defendant. These averments are in substance that the defendant may wrongfully pretend, as an excuse for its wrongful act in the premises, that the complainant's letters patent are no longer in force or operative, because at the time they were granted the invention described therein had been first patented in the Austro-Hungarian empire for the term of one year, and that such foreign patent has expired, and consequently the term of complainant's patent has expired; but that the facts are that Edison, at the time of making

the invention, was and always since has been a resident and citizen of the United States, and made, perfected, and reduced the invention to practice in the United States, and made and filed his application for a patent in the United States patent office August 9, 1880, and prior to any application made by him abroad; and that, in order to protect his invention in foreign countries, it was necessary that he should promptly apply for letters patent abroad; and the issue of the foreign patent preceded the United States patent solely because of the greater diligence and more prompt procedure of the foreign administration. The bill further avers that the letters patent of the Austro-Hungarian empire were granted for the term of 15 years from their date, and are in full force and effect. The plea alleges that prior to the granting of the complainant's letters patent the invention or discovery described and claimed therein had been patented by Edison, or with his knowledge, consent, and procurement, by a public patent of the Austro-Hungarian empire, granted to Edison July 21, 1881; that the term for which the foreign patent was granted was one year from its date, and expired on the 21st day of July, 1882; that subsequently, by grant made on the 19th day of July, 1882, the foreign patent was extended for a new term of one year, and the extended term expired on the 21st day of July, 1883; and that the extended Austro-Hungarian patent was existing and unexpired when the complainant's letters patent were granted, but the term thereof expired July 21, 1883, and before the commencement of this suit. The plea denies the averments of the bill that the Austro-Hungarian patent was granted for the term of 15 years, and was in full force and effect when this suit was brought.

If the complainant's patent has expired before the bringing of this suit, it is plain that a court of equity has no jurisdiction of the cause of action for infringement, and the complainant can only proceed by a suit at law for the recovery of damages. *Root* v. *Railway Co.*, 105 U. S. 189. It is contended for the complainant that such a defense cannot be raised by a plea, and, if it could, that the present plea is insufficient, both in matters of form and substance, to present such a defense. One of the uses of a plea in suits at law or in chancery is to object to the jurisdiction of the court. *Livingston* v. *Story*, 11 Pet. 351; *Wickliffe* v. *Owings*, 17 How. 47, 51. In a case where it was urged that the sum involved was not of sufficient amount to authorize a court of chancery to take cognizance of the cause, Chancellor WALWORTH said. "If that fact did not appear upon the face of the bill, it might undoubtedly have been pleaded in bar of relief." *Smets* v. *Williams*, 4 Paige, 364. In Beames, Pl. Eq. 55, it is stated: "Those pleas which are commonly called 'pleas to jurisdiction' do not proceed the length of disputing the right of a plaintiff in the subject of the suit, or allege any disability on the part of the plaintiff to prosecute the suit, but simply assert that a court of chancery is not the proper court to take cognizance of those rights." The present plea falls within this definition.

There is no force in the objection that the plea is a negative plea. Such pleas are sanctioned, and are now frequently resorted to. A fa-

miliar instance is a plea denying partnership where the bill prays an account of partnership transactions.   The present plea is not strictly a negative plea.   It is a negative plea so far as it denies the averments of the bill that the term of the Austro-Hungarian patent is for 15 years, and that the patent was in full force when the suit was brought.   It is an affirmative plea as to all the other facts which it sets forth.   The effect of the plea is to admit all the facts alleged in the bill except those specifically denied, and to meet the case made by the bill by alleging the new facts intended to show that the complainant's patent had expired at the time of the commencement of the suit.   If the bill did not contain the anticipatory averments which have been inserted in it, the denial in the plea would have been unnecessary.   With this denial in the plea it is only necessary to inquire whether the facts set up affirmatively are a defense to the suit, admitting that everything in the bill not denied is true.   A pleading is sufficient which sets forth documents according to their tenor or legal effect, and avers the substantive facts relied on as a cause of action or defense.   Tested by this rule, the plea is sufficient in form without making a profert of the Austro-Hungarian patent, or setting out in detail any of the evidential facts to show that it was a valid grant of letters patent for the invention for the term of one year.   If issue were taken on the plea it would only be necessary for the defendant to produce a properly authenticated copy of the foreign patent, and show the seal or signature affixed to it to be the act of an officer duly authorized to issue patents.   The effect and operation of the patent is to be determined as a question of law by the terms of the document, unless evidence of the foreign law is introduced to qualify or controvert the construction which would otherwise be placed upon the instrument.   It is not necessary in a pleading to allege that an instrument was executed by an agent, and that the agent was duly authorized thereto; it is sufficient to allege its execution by the principal.   *Delafield* v. *Kinney*, 24 Wend. 345.   The tribunals of every nation take judicial notice of the public seals of sovereign states, (1 Greenl. Ev. § 4,) and the annexation of the seal will be presumed to have been made by a person having custody thereof, and competent to do the act.   1 Phil. Ev. 419.   The plea sets forth a sufficient defense if the term of a United States patent ends at the same time the term of a foreign patent granted for the same invention ends, when it appears that the foreign patent was not applied for until after the domestic patent was applied for; that it was not applied for by the inventor himself, but by some other person by his procurement; and that the domestic patent was granted to one who, at the time of the application, was an American citizen, and had made and reduced his invention to practice in this country.   The question presented depends upon the meaning and effect of section 4887, Rev. St. U. S., which is as follows:

"No person shall be debarred from receiving a patent for his invention or discovery, nor shall any patent be declared invalid, by reason of its having been first patented or caused to be patented in a foreign country, unless the same has been introduced into public use in the United States for more than two years prior to the application.   But every patent granted for an inven-

tion which has been previously patented in a foreign country shall be so limited as to expire at the same time with the foreign patent, or, if there be more than one, at the same time with the one having the shortest term; and in no case shall it be in force more than seventeen years."

It is not at all material whether the foreign patent is granted to the inventor who makes the application in this country or to some other person to whom he has caused the invention to be patented; the statute expressly covers both cases. Nor is the fact of any importance that the inventor who makes the application in this country is one of our own citizens; because, since the act of July 4, 1836,[1] which repealed all former patent laws, and established a comprehensive code covering the whole subject, our laws have not made any distinction between our own citizens and foreigners in respect to the privilege of obtaining patents, or the conditions and restrictions of the privilege granted, except as to the amount of the fee to be paid, and the protection of inventions by *caveat*. The question may therefore be simplified by eliminating these immaterial ingredients; and the real inquiry is whether the section limits the term of a domestic patent to the term of a foreign patent when the application for the foreign patent is not made until subsequent to the application in this country, but the foreign patent issues before the domestic patent. If it were proper to treat this question as an original one, it would be necessary first to inquire whether there is any ambiguity in the language of the statute. If there is not, the duty of the court is to give effect to its obvious meaning, notwithstanding it may be thought to make an unreasonable and harsh innovation upon the pre-existing privileges of our own inventors. It is not only the safer course to adhere to the words of a statute, construed in their ordinary import, instead of entering into any inquiry as to the supposed intention of congress, but it is the imperative duty of the court to do so. Where the meaning of the Revised Statutes is plain the court cannot look to the sources of the revision to ascertain whether errors have or have not been committed by the revisers. *U. S.* v. *Bowen*, 100 U. S. 508. There is no practical difference in the phraseology of section 4887 and that of section 25 of the act of July 8, 1870, from which the section is reproduced. The precise point now raised by the complainant, but made with reference to the effect of section 22 of the act of 1870, was considered by this court in *Electrical Co.* v. *Electric Co.*, 21 Blatchf. 450. It was insisted by the defendant in that case that the complainant's patent expired at the date of the expiration of an Austrian patent, and the complainant took the position that the defense was not tenable because the application for his United States patent was filed before the application for the Austrian patent was made. It was held by BLATCHFORD, J., that the date of the application for the United States patent could not affect the question, and that the meaning of the statute was that the United States patent should expire at the time of expiration of the foreign patent, irrespective of the time when the foreign patent was applied for. Judge BLATCHFORD adopted

[1] 5 U. S. St. 117.

in that case the views of Judge NIXON upon the same question in *Bate Refrigerating Co.* v. *Gillett*, 13 Fed. Rep. 553. In the *Bate Case*, the question arose under section 4887, and it was contended that complainant's United States patent did not expire at the date of the expiration of a Canadian patent, because the application for his patent was filed antecedent to the application for the grant of the Canadian patent. The court was of the opinion that it would be wresting the language of the section from its plain and obvious meaning to sustain that position. These decisions have been followed by BRADLEY, J., upon a subsequent hearing in the *Bate Case*, 31 Fed. Rep. 809, and by COLT, J., in *Bate Co.* v. *Hammond, post*, 151.

In view of these adjudications, the question should not be considered as an original one. The plea is therefore allowed.